Daniels, J.
J.—This action is brought by the plaintiffs, as creditors of the European Petroleum Company, against the defendants, as owners of a portion of the capital stock. The corporation is alleged to have been formed under the general law of this State providing for the organization of manufacturing, mining, mechanical, and chemical corporations, but the particular purpose and object for which it was organized is nowhere stated in the complaint, which is one of the defects relied upon in support of the demurrer. It is generally alleged that the corporation was formed under that act; and that is sufficient to warrant the conclusion that it was for one of the objects or purposes contemplated and allowed by the act, for it could not be otherwise formed under that act. The .objects for which corporations may be formed under that act are specifically declared, and unless the company is formed for the promotion of one or more of such objects, it could not be true that it was organized under the act. The allegation must therefore be construed as substantially declaring what must be fairly understood and implied from the language it uses—that the corporation was formed for one of the purposes allowed and defined by the statute; for courts are not allowed to presume a violation of the law, even against a corporation—on the contrary, the presumption is the other way, where presumptions are entertained.
The next objection to the complaint is that which arises upon the allegation of the demand owing from the corporation to the plaintiffs. By that it is alleged that the corporation, for value received, made and delivered certain promissory notes, which were afterward indorsed to, and at the time when the suit was commenced were held and owned by, the plaintiffs. The defendants maintain that this'does not disclose the existence of a demand legally binding upon the corporation itself. And the defendants are not liable, even though they were stockholders when the claim was created, unless the corporation was legally liable for its payment. But corporations formed under this statute, like others, have the power of incurring debts and other liabiities arising out of contracts. And, as incidental, to that power, they may, when such liability is created, execute and deliver their promissory note or notes, on account of it (Moss v. Averell, 10 N. Y. [6 Seld.], 449). And when, as in this case, it is alleged that the corporation executed and delivered its *73 promissory notes, for value received, it may without impropriety be assumed, that it was done for a legal consideration under the powers with which it was by law invested, and in the course of the transaction of its legitimate business; and notes so given by it would be legally binding upon it. "When a corporation has power to enter into an agreement, it is presumed by the law in favor of the validity of the agreement made, where the contrary is not made affirmatively to appear, that it was made in the proper exercise of such power, and not that the corporation exceeded its powers or violated the law (Farmers’ Loan and Trust Company v. Curtis, 7 N. Y. [3 Seld.], 466; Chautauqua County Bank v. Risley, 19 N. Y., 369, 379-382).
Under the allegations in the complaint, therefore, the corporation is shown to be liable upon the notes of which the plaintiffs were the holders.
But the defendants further object that the complaint does not exhibit a legal cause of action against them, even though it may against the corporation in which they were stockholders at the time when the debt was contracted; because it does not show that judgment had been rendered against the company, and an execution returned upon it, in whole or in part unsatisfied; and this presents the more material and difficult question arising in this case.
The statute declares that the stockholders in every company incorporated under it shall be severally and individually liable to the creditors of the company in which they are stockholders, to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by such company, until the whole amount of capital stock fixed and limited by such company shall have been paid in, and a certificate thereof shall have been made- by the president and a majority of the trustees, and recorded in the office of the clerk of the county in which the business of the company is carried on. (Laws of 1848, ch. 40, §§ 10-11, Same Stat., 1 Rev. Stat., 4th ed., 1216, §§ 28-29, or 2 Id., 5th ed.) And the complaint in this case contains the proper allegations, showing that the capital of the corporation in question Was not paid in, and that no certificate showing it to have been paid was ever made or recorded. The object of the legislature in requiring the payment of the capital of the company was to secure to those *74 dealing with it the means of satisfying the obligations it might ordinarily be expected to incur, and, in case of a failure to observe the requirements of the law in that respect, to impose a corresponding liability upon those whose default occasioned such failure. The real contracting debtor in all such cases is the corporation, and the liability of the stockholders is subsidiary or incidental to that, not arising out of any contract or obligation entered into by them, in terms, with the creditor, but originating in and arising out of their default in not securing the full payment of the corporate capital. Under such a state of the case, it would ordinarily and reasonably be expected that the creditor should be required to resort to his immediate and actual debtor, by the contract, for the satisfaction of the demand arising out of it, before he could be at liberty to resort to the stockholders, whose liability is of a secondary character. And, in conformity with that expectation, it will be found that the general laws providing for the formation of corporations in many cases explicitly require that the creditor shall exhaust his remedy against the corporation itself before he is at liberty to proceed against the stockholders who have made default in the payment of the corporate capital. The statutes providing for the formation of telegraph companies, ocean navigation companies, lake and river navigation companies, stage companies in the city of Hew York, and plank and turnpike road companies are of this description (2 Rev. Stat, 5th ed., 740; § 10, 789; § 9, 799; § 29, 912; § 10, 507; § 129). But that system of legislation has not been uniformly followed; for in some cases the stockholders are made absolutely liable for the debts of the company, without any proceedings being first taken against it. That is the case respecting subscribers to the cash capital of certain insurance companies, shareholders in building and loan associations, ferry companies and in mining and guano companies, and those formed for improving the breed of domestic animals (2 Rev. Stat, 5th ed., 750 ; § 22, 752 ; § 30, 783; § 11, 809 ; § 70, 822 ; § 11, 825 ; § 7). While the liability of stockholders in gas light and building companies is declared in substantially the same terms as those which are used to define the liability of stockholders in manufacturing corporations.
Under this diversity in the laws which relate to this liability, *75 no presumption can be entertained that the legislature intended to adopt any uniform, general system for the regulation and government of it. In most cases the liability of the stockholder is made to depend upon similar circumstances, but in many others it arises out of circumstances altogether different. The intention of the legislature must, therefore, be searched for in the objects of the statute, and the terms employed to express that intention, rather than in any general system it might reasonably be supposed would be adopted on this subject, extending alike to all similarly formed corporations.
The only section of the general law under which the corporation in question was formed which bears directly on the solution of the present question, is that which declares that “No stockholder shall be personally liable for any debt contracted by any company formed under this act, which is not to be paid within one year from the time the debt is contracted, nor unless a suit for the collection of such debt shall’ be brought against such company within one year after the debt shall become due; and no suit shall be brought against any stock holder who shall cease to be a stockholder in any such company, for any debt so contracted, unless the same shall be commenced within two years from the time he shall have ceased to be a stockholder in such company, nor until an execution against the company shall have been returned unsatisfied in whole or in part” (2 Hev. St at., 5th ed., 663, § 47). The literal reading of this section of the statute is against the construction claimed for it by the defendants. But statutes are not always to be construed according to their literal reading. Ordinarily that will secure a very safe guide by which the legislative intent may be ascertained. But where that intent is doubtful, the general policy and scope of the statute may properly be considered for the purpose of discovering it, and when that intent is discovered it must be followed, even though it. may fail to harmonize entirely with the literal reading of the law, for whatever is within the spirit or intent of the law is within the law itself, although not within the letter, while that which is within the letter and not within the spirit or intent is not within the law.
Tire general policy and object of these provisions of the law were to insure to the creditors adequate and efficient remedies *76 for the payment of the debts incurred by the corporation, which is consistently and justly accomplished by rendering the remedy against the stockholder dependent upon the failure to acquirb satisfaction from the corporation by the ordinary means of legal proceedings. For if the stockholders can be resorted to in the first instance, many cases would arise where the secondary or subsidiary debtor would be compelled to pay the debts, when the corporation would be entirely solvent and able to make payment of them itself; which could not fail to introduce uncertainty and confusion in the affairs of these institutions. These considerations to some extent indicate the probability that the legislature did not intend that the stockholders should be sued until the legal remedy of the creditor against the company had been ineffectually exhausted, and the general frame and scope of this section seems to warrant the same conclusion; for according to its literal reading, it requires a judgment against the company, and an execution returned in whole or in part, unsatisfied upon it, before a person who has ceased to be a stockholder after the contracting of the debt can be sued for it; and no good reason can be imagined for requiring a suit in that case, that does not apply with equal cogency to the case of a person continuing to be a stockholder. Ro object can be accomplished by the judgment and execution against the company in the one case, that justice does not equally require in the other. But this section, it will be seen, goes further, for it expressly requires a suit’to be commenced against the company before an action can be brought against the stockholders; and it is averred in the complaint that such a suit was commenced in this case. But a mere suit against the company, not prosecuted to judgment and execution, can be of no benefit whatever to the stockholder, and it would be unreasonable to suppose that such a suit would be required as a condition to the right to maintain an action against the stockholder, if that was all that was intended, for a suit alone would in no way relieve or benefit the stockholder in whose behalf the law expressly requires it. The only object the legislature could have in requiring such a suit, was to compel the creditor to collect his debt in the first instance from the corporation. In that manner alone can it be made of any substantial advantage to the stockholder, and there is no reason for believing his liability would be made to depend on a suit being brought against the company, unless it was de *77 signed that the suit should be consummated by a judgment and execution. The fair construction of this section of the statute demands that it should be so read as to require a suit against the company for the recovery of the debt, together with a judgment upon it, and an execution returned in whole or in part unsatisfied, before the creditor can be at liberty to maintain his action against any of the stockholders. And even in that case he cannot maintain the action against a person who has ceased to be a stockholder, unless the suit against him shall also be commenced within two years from the time he ceased to be a stockholder.
Many of the cases that have passed through the courts, in which the personal liability of stockholders has been examined, arose under different statutes from that under which the present company was formed, and some of those arising under this statute were predicated upon the liability of the trustees, for not making and publishing the annual statement required by the law, for which they become liable for all debts contracted while they were in such default, without any previous proceedings whatever against the corporation. But in all those where the party has been charged as a stockholder alone, judgment was averred or proven to have been recovered against the corporation, and an execution returned, wholly or partially unsatisfied, before the suit against the stockholder was instituted. This of course, is not controlling, but it certainly exhibits the judgment of the legal profession to be in favor of the construction placed upon this statute, so far as such judgment has been declared. The length to which this examination of the present case has been extended, renders a detailed examination of the authorities referred to impracticable,• and as they have no direct bearing upon its consideration, no useful result could be attained if such an examination should be made. It is sufficient to say that none of them are in conflict with the conclusions already intimated. The question involved is one of very great practical consequence, on account of its rapid increase during the past few years in manufacturing, mining and mechanical corporations, and for that reason it deserved a more extended examination than should otherwise have been bestowed upon it.
The defendants should have judgment on the demurrer, with leave to the plaintiffs to amend in twenty days on the payment of the costs of the demurrer.